UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BROWN,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case No. EDCV 10-200 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.    SUMMARY**

On February 18, 2010, plaintiff David Brown ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 1, 2010, Case Management Order ¶ 5.

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed adequately to develop the medical record.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 23, 2006, plaintiff filed an application for Supplemental Security Income. (Administrative Record ("AR") 63, 72, 122). Plaintiff asserted that he became disabled on May 24, 2000, due to chronic scoliosis, back problems, and severe back pain. (AR 63, 72, 122, 131). The ALJ examined the medical record and heard testimony from plaintiff, a medical expert, and a vocational expert on September 23, 2009. (AR 26-55).

On November 13, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 78). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: scoliosis of the mid-back and arthritis of the lumbar spine (AR 74); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 74); (3) plaintiff retained the residual functional capacity to perform light work (AR 75);[1] (4) plaintiff could not perform his past relevant work (AR 77); and (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 77).

The Appeals Council denied plaintiff's application for review. (AR 1-3).
///

---

[1] Specifically, the ALJ determined that plaintiff could: (i) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) stand and/or walk six hours in an eight-hour workday; (iii) sit without limitation; (iv) occasionally perform postural activities such as balancing, stooping, kneeling, crouching, and crawling; and (v) not climb ladders, ropes or scaffolding. (AR 75).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

1    significant numbers in the national economy?  If so, the claimant is
2    not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///
///

## IV. DISCUSSION

### A. The ALJ Failed Adequately to Develop the Record

#### 1. Pertinent Facts

##### a. The Medical Record

The medical record documenting plaintiff's limitations is not extensive.

An October 13, 2006 x-ray of plaintiff's lumbar spine revealed "minimal degenerative disease particularly in the upper lumber spine associated with a scoliotic curve." (AR 182).

On October 13, 2006, Dr. Jeff Altman, performed a complete orthopedic consultation for plaintiff. (AR 178-81). Dr. Altman noted that his examination of plaintiff revealed "some tenderness" in plaintiff's back and hip, but otherwise found no "gross functional deficits." (AR 181). Dr. Altman opined that plaintiff could: (i) push, pull, lift, and carry 20 pounds occasionally and 10 pounds frequently; (ii) walk and stand for six hours in an eight-hour workday; (iii) sit for six hours in an eight-hour workday; (iv) do postural and agility activities on a frequent basis; and (v) do gross and fine manipulation without restriction. (AR 181).

On October 25, 2006, Dr. M. H. Yee, a state agency reviewing physician, completed a Physical Residual Functional Capacity Assessment, in which the doctor opined, in pertinent part, that plaintiff (i) could lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk for about six hours in an eight-hour workday; (iii) could sit for about six hours in an eight-hour workday; (iv) could occasionally climb ramps, stairs, ladders, rope or scaffolds, never balance, and frequently stoop, kneel, crouch or crawl; and (v) had no manipulative limitations. (AR 184-86).

On November 25, 2006, plaintiff was treated at the Redlands Community Hospital for acute exacerbation chronic back pain. (AR 195-97).

///

On March 9, 2009, Dr. Bradshaw completed the statement of provider section on a single page authorization to release medical information. (AR 202). Dr. Bradshaw opined that plaintiff (i) had a medically verifiable condition that would limit his ability to work; (ii) was actively seeking treatment; and (iii) could work only 1-2 hours per day. (AR 202).

### b. Plaintiff's Statements and Testimony

On August 29, 2006 and September 15, 2006, plaintiff completed exertional daily activities questionnaires which each reflect, in pertinent part, that plaintiff (i) experienced pain throughout most of the day; (ii) could not sit or stand for long periods without pain; (iii) could walk only a block without experiencing "incredible pain"; (iv) could do yard work, but only with constant breaks for rest; (v) needed to lay down after working for 10 minutes because of pain; and (vi) needed to rest "[a] couple times a day for [] 1-2 hours." (AR 154-61).

At the administrative hearing on September 23, 2009, plaintiff testified, *inter alia*, that: (i) he was unable to return to his past work or any other work (AR 32); (ii) if he stood for a period of time he needed to lean on something because his back felt like it would "give out," his leg would go numb, and he would have "incredible" pain (AR 39); (iii) his medication made him sleepy (AR 39-40); and (iv) plaintiff's doctor told him that she would send him for an MRI of his back once he quit smoking because his "back [was] all screwed up" (AR 42).

### c. Vocational Expert's Testimony

At the administrative hearing, the vocational expert testified, *inter alia*, that if plaintiff (or a hypothetical person with plaintiff's characteristics) needed to be "off task approximately 20 percent of the time" due to pain, or needed to take an unscheduled one hour break out of each work day in addition to the lunch break, there would be no work plaintiff could do. (AR 51-54).

///
///

### 2. Analysis

Plaintiff contends that the ALJ failed adequately to develop the record by obtaining medical records from Dr. Tonda D. Bradshaw, an internal medicine physician, who was plaintiff's treating physician. (Plaintiff's Motion at 4-6). The Court agrees.

An ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ's duty exists whether or not plaintiff is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, when the claimant is unrepresented, the ALJ must be especially diligent in "exploring for all the relevant facts." Id. (citation omitted). The ALJ's duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). An ALJ may discharge his duty to develop the record in several ways, including: subpoenaing the plaintiff's physician, submitting questions to the physician, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Tonapetyan, 242 F.3d at 1150 (citations omitted). "[B]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Social Security Ruling ("SSR") 96-5p.

Here, the ALJ rejected Dr. Bradshaw's opinions, assertedly because the physician "[had] not furnish[ed] her treatment records or clinical or radiological findings" (AR 76), but apparently made no effort to recontact Dr. Bradshaw for copies of plaintiff's records or other clarification. In fact, the record reflects that

such medical records may have been available from Dr. Bradshaw – *i.e.* plaintiff testified that Dr. Bradshaw had "all [of his] medical records."[2] (AR 43). If the ALJ questioned the basis for Dr. Bradshaw's opinions, the ALJ should have inquired of Dr. Bradshaw before rejecting the treating physician's opinions. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [the treating physicians'] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.") (citations omitted); 20 C.F.R. § 416.912(e)[3]. Whether Dr. Bradshaw properly based her opinions on sufficient objective clinical findings is a material question, but a

---

[2] In addition, a Disability Report - Appeal form reflects that plaintiff was treated and also administered a blood test by Dr. Bradshaw. (AR 170, 172).

[3] 20 C.F.R § 416.912(e) provides the following with respect to the Social Security Administration's procedures for recontacting medical sources:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

8

question that the ALJ should have afforded Dr. Bradshaw an opportunity to answer and explain. The Court cannot find such an error harmless. Dr. Bradshaw opined that plaintiff was able to work only one to two hours a day – a limitation that, in light of testimony from plaintiff and the vocational expert, suggests a finding of "disabled" in plaintiff's case.

## V. CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 6, 2010

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not, and has not adjudicated plaintiff's other challenge to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

9